UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELANIE E. DAMIAN,

　　　　　Plaintiff,

　　v.

YAHIA MEFTAH, et al.,

　　　　　Defendants.

Case No.  22-cv-02573-JCS

**ORDER TO SHOW CAUSE WHY MOTION TO DISMISS SHOULD NOT BE CONVERTED TO SUMMARY JUDGMENT AND GRANTED**

Re: Dkt. No. 118

## I.　　INTRODUCTION

　　This dispute stems from another action currently pending in the U.S. District Court for the Southern District of Florida: *Commodity Futures Trading Commission v. Atkinson*, Case No. 1:18-cv-23992-JEM (the "CFTC Action").  This fraudulent transfer case was also originally filed in the Southern District of Florida, but after dismissing for lack of personal jurisdiction, that court reconsidered its order of dismissal, reopened the case, and transferred the case to this district under 28 U.S.C. § 1404(a).

　　Plaintiff Melanie E. Damian, acting in her capacity as receiver of All In Publishing, LLC[1], seeks to recover $1,442,274.93 from Defendants Yahia Meftah (doing business as Yahia Meftah Sole Prop. ("YMSP")) and Zak Meftah.  Plaintiff alleges that Defendants unlawfully transferred profits earned from an illegal binary options marketing scheme and brings one count of fraudulent transfer against them under Florida Statutes section 726.105(1)(a).  Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claim is time-barred under Florida Statutes section 726.110(1).  The Court held a hearing on November 4, 2022.

---

[1] A corporate entity owned by Timothy Atkinson, the defendant in the CFTC Action.

It is not clear that Defendants are entitled to dismissal based solely on the allegations of Plaintiff's complaint and public records subject to judicial notice—the sources to which they properly direct their motion to dismiss. Based on Plaintiff's supplemental filings, however, it appears that Plaintiff's claim was untimely. Since that extrinsic evidence cannot be considered under Rule 12(b)(6), Plaintiff is ORDERED TO SHOW CAUSE why the Court should not convert Defendants' motion into a motion for summary judgment under Rule 12(d) and Rule 56, and why the Court should not grant the motion in that converted form.

Plaintiff shall file a response to this order no later than January 13, 2023, which may (but is not required to) include additional evidence or arguments why further discovery is necessary before the matter can be resolved. Defendants may file a response no later than January 20, 2023, but they are not required to do so. While Defendants' response may also include evidence if they so choose, the parties are advised that the Court does not intend to grant pre-discovery summary judgment at this time on any theory beyond what is specifically addressed in this order, i.e., the significance of when Plaintiff possessed the relevant bank records. If (and only if) Defendants file additional evidence with their response, Plaintiff may file a final brief no later than January 27, 2023.[2]

## II.   BACKGROUND

Judge Jose E. Martinez has sufficiently explained the background of the CFTC Action and the current disagreement in a number of orders on the docket. Accordingly this order will only briefly summarize the relevant facts.

### A.   Allegations of the Complaint

In 2012, Timothy Atkinson formed All In Publishing, LLP ("AIP"). Order on Defendants' 2d Motion to Dismiss ("2d MTD Order," dkt. 93)[3] at 1. He acted as the sole shareholder and president. *Id.* at 1–2. The second amended complaint ("SAC," dkt. 62) alleges that Zak[4] acted as

---

[2] The parties have consented to the jurisdiction of a United States magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

[3] *Damian v. Meftah*, No. 19-25273-CIV, 2021 WL 8775762 (S.D. Fla. Dec. 28, 2021). Citations to previous orders in this case refer to page numbers of the versions filed in the ECF docket.

[4] Because Zak Meftah and Yahia Meftah share the same last name, this order refers to them by their first names.

United States District Court
Northern District of California

Atkinson's partner immediately upon AIP's formation in 2012 or became involved with AIP shortly thereafter. *Id*. at 2. Between February 2013 and November 2016, the two of them allegedly used AIP as a digital marketing services front to operate ad campaigns designed to direct and funnel customers to illegal binary options trading websites. *Id*. The second amended complaint alleges that customers would then open trading accounts on those illegal websites allowing AIP, and in turn Atkinson and Zak, to earn commissions as third-party affiliate marketers. *Id*.

Zak, a California resident, allegedly created software and email infrastructure that AIP used in its fraudulent scheme. *Id*. For his work and collaboration, Zak and Atkinson entered into an agreement where Zak would be entitled to half of AIP's net profits. SAC ¶ 10. The second amended complaint alleges that Zak requested that AIP pay the profits to YMSP, his relative Yahia's sole proprietorship. *See* 2d MTD Order at 2. YMSP would then forward transfers from AIP to Zak. *Id*. at 2. From February 8 to December 31, 2013, the second amended complaint alleges that AIP conducted thirteen fraudulent transfers, sending a total $1,442,274.93 to YMSP, which YMSP then transferred to Zak. *Id*.

**B.      Procedural History of the CFTC Action**

The Commodity Futures Trading Commission ("CFTC") sued Atkinson and AIP, among others (collectively, the "Receivership Defendants"), for injunctive relief in September 2018. SAC ¶ 1. The Florida court granted the CFTC's motion for a restraining order, froze all of the Atkinson defendants' assets, and appointed Melanie E. Damian—the plaintiff in this case—as receiver of AIP on October 5, 2018. *Id*. ¶ 2. The October 5 order authorized Plaintiff to "take possession, custody and control of all the Receivership Defendants' assets, establish control of the entity Receivership Defendants' businesses (to the extent they exist and continue to operate), prevent the withdrawal or misapplication of the Receivership Defendants' funds, collect funds due to the Receivership Defendants, obtain documents and records pertaining to the Receivership Defendants' assets, transactions and business operations, and perform all acts necessary to preserve the value of the Receivership Estate." *Id*. ¶ 3. The Florida court granted a preliminary injunction on November 16, 2018, which extended the injunctive relief and asset freeze, and

continued Plaintiff's receivership.  *Id.* ¶ 4.  And on May 22, 2019, the court granted a permanent injunction against the Atkinson defendants, allowing Plaintiff to bring any fraudulent transfer recovery actions necessary to increase the value of the receivership estate.  *Id.* ¶¶ 5, 6; 2d MTD Order at 3.[5]

Immediately upon her appointment in October 2018, Plaintiff began collecting financial documents such as bank statements, wire transfer details, and business records, which she promptly forwarded to forensic accountants for analysis.  SAC ¶ 27.  The accountants discovered and alerted Damian on or around January 21, 2019, to the allegedly fraudulent transfers involving Zak and Yahia.  *Id.*

### C.    Procedural History of the Current Dispute

Damian sent a demand letter to Yahia in June of 2019.  Opp'n (dkt. 121) at 2.[6] Discussions about the alleged transfers continued for almost four months until November 8, 2019, when the parties signed a tolling agreement that would run until December 23, 2019, tolling the "statute of limitations and any other procedural or substantive defenses based, in whole or in part, on any delay by the Receiver in filing a lawsuit against Defendants that were not otherwise barred" at the date of the agreement.  SAC ¶ 28.

Damian initially brought suit against Yahia and YMSP for fraudulent transfer and unjust enrichment on the last day of the tolling period, December 23, 2019, but then amended her complaint in April 2020, asserting only one count against Yahia and YMSP for fraudulent transfer under Florida law.  *See* Original Complaint (dkt. 1); First Amended Complaint (dkt. 27); 2d MTD Order at 3.  Yahia and YMSP moved to dismiss the amended complaint for lack of personal

---

[5] Although Plaintiff alleges that the permanent injunction authorized her to bring fraudulent transfer actions, SAC ¶ 15, she does not argue that the date of the permanent injunction (as opposed to her initial appointment) is relevant to the statute of limitations, and the initial order of appointment also appears to grant her the relevant authority to bring suit.  *See, e.g.*, Order Appointing Receiver (dkt. 48) ¶ 27(H) (authorizing Plaintiff to "[i]nitiate . . . any actions or proceedings in state, federal or foreign court that [she] deems necessary and advisable to preserve or increase the value of the Receivership Estate").

[6] The second amended complaint does not address the demand letter, and the Court generally would not consider an unsupported assertion in a legal brief when resolving a motion to dismiss. The fact of Plaintiff sending the demand letter does not appear to be in dispute, and it does not alter the outcome of the present motion.  It is therefore noted here solely for context.

jurisdiction and on the merits.  2d MTD Order at 3; Order Granting Plaintiff's Renewed Motion to Transfer Venue ("Transfer Order," dkt. 99)[7] at 2.  The Florida court dismissed the amended complaint on personal jurisdiction grounds because Plaintiff did not satisfy Florida's long-arm statute for two reasons:  (1) Yahia and YMSP did not conduct business in Florida, and interaction with a Florida bank account did not further jurisdictional allegations; and (2) Plaintiff failed to assert that Yahia and YMSP conducted any tortious activity *in* Florida.  2d MTD Order at 3–4.

Plaintiff responded by moving to reopen the case and to file a second amended complaint, or, in the alternative, to transfer venue to the Northern District of California.  *Id.* at 4; Transfer Order at 2.  The court granted leave to amend, and Plaintiff filed the operative second amended complaint on March 1, 2021, adding Zak as a defendant and no longer listing YMSP as a distinct defendant separate from Yahia, but instead naming "Yahia Meftah d/b/a Yahia Meftah Sole Prop." As a single party.  2d MTD Order at 4; *see generally* SAC.  Plaintiff asserts one count of fraudulent transfer under Florida law against both Zak and Yahia, seeking to recover the amount transferred to YMSP from AIP.  SAC ¶¶ 40–52.  She asserts that she has standing to bring that claim on behalf of both AIP and its creditors.  *Id.* ¶¶ 16–17.

Yahia and Zak moved to dismiss for lack of personal jurisdiction and on the merits, and the court again dismissed the complaint for lack of personal jurisdiction, declining to reach Defendants' other arguments, and denied Plaintiff's request to transfer venue.  *See generally* 2d MTD Order.

Plaintiff renewed her motion for transfer of venue, arguing that she had not fully developed the transfer request because it had been an alternative to dismissal rather than her primary position.  *See* Transfer Order at 2.  The court granted the motion to transfer under § 1404(a), stating that Plaintiff's potential inability to re-file her case in this district due to a statute of limitations issue "tip[ped] the scale in favor of transfer."  *Id.* at 4.  At the November 4, 2022 hearing on the present motion, the parties agreed that Judge Martinez's order on reconsideration effectively vacated the order of dismissal, and that Plaintiff's second amended complaint is therefore operative after

---

[7] *Damian v. Meftah*, No. 19-25273-CIV, 2022 WL 2068723 (S.D. Fla. Apr. 27, 2022).

transfer to this district.

### D.   The Parties' Arguments

Zak and Yahia now move again to dismiss, arguing that Plaintiff failed to file a complaint against them before the statute of limitations for fraudulent transfer ran.

#### 1.   Defendants' Motion to Dismiss

Defendants argue that the second amended complaint fails to state a claim because it is time-barred—the one-year statute of limitations for fraudulent transfers under Florida Statutes section 726.105(1)(a) ran after Plaintiff had been appointed receiver, but before she filed a complaint.  Mot. (dkt. 118) at 6.  Defendants contend that the language of the statute requires a claim be brought either within four years after the transfer or, if more than four years after the transfer, within one year after the transfer "was or could reasonably have been discovered by the claimant." *Id*. at 7 (quoting Fla. Stat. § 726.110(1)).  Because this action, filed in 2019, seeks funds from transfers that occurred in 2013, Defendants assert that the one-year provision controls since more than four years have elapsed.  *Id*.

Defendants argue that Plaintiff had one year from her appointment as receiver to bring a claim.  *Id*.  Defendants cite several federal court decisions in support of their argument that the clock should start upon appointment of the receiver.  *See Wiand v. Meeker*, 572 F. App'x 689, 692 (11th Cir. 2014) ("[T]he one-year limitations period began to run when Wiand was appointed receiver."); *Wiand v. Wells Fargo Bank, NA.*, 86 F. Supp. 3d 1316, 1325 (M.D. Fla. 2015) (finding, based on the timing of the receiver's appointment, there was "adequate time" for transfers to reasonably have been discovered).  *Id*.  Based on this timeline, Defendants argue that Plaintiff should have filed a complaint by October 5, 2019 (one year after her appointment),but failed to do so.  *Id*.

Defendants maintain that it was the appointment of the receiver, rather than actual discovery of the transfers on or around January 21, 2019, which started the running of the statute of limitations because, in Defendants' view, all the necessary files immediately became available to the receiver upon appointment, and AIP's bank account at issue was addressed in testimony and briefing during the CFTC Action.  *Id*. at 8.  Defendants emphasize that Plaintiff admits to

United States District Court
Northern District of California

1   "immediately" collecting financial documents with bank statements, wire transfer details, and

2   business records for AIP upon her appointment. *Id.* (citing SAC ¶ 27). Furthermore, Defendants

3   assert that Plaintiff's complaint does not include any reasons why Plaintiff could not actually or

4   reasonably discover the transfers in the financial documents she received immediately upon

5   appointment in October 2018. *Id.* at 9.

6          Defendants note that Plaintiff herself cites *In re Blackburn,* 209 B.R. 4, 11 (Bankr. M.D.

7   Fla. 1997), in her second amended complaint, which states "that [the] statute of limitations began

8   to run upon appointment of Receiver when Receiver was able to take control of receivership

9   entity." *Id.* at 8–9. Defendants contend that *In re Blackburn* imposes no further prerequisites for

10  when the limitations period begins, and that Plaintiff's complaint "inaccurately states the law

11  concerning how the limitations period is tolled for an appointed receiver to bring an action for

12  fraudulent transfers" by also citing requirements that the receiver obtains full control of a

13  company, actually discovers a transfer, and has an opportunity to address any wrongdoing. Mot.

14  at 9. Even if *In re Blackburn* supported that expanded test, Defendants note that it does not deal

15  with Florida's fraudulent transfer statute, but rather addresses a breach of fiduciary duty and

16  usurpation of corporate opportunity. *Id.*

17         Defendants next assert that a receiver need not be able to redress wrongs committed

18  against the estate for the limitations period to begin, and even if such a requirement existed,

19  Plaintiff already had the opportunity and ability to bring the claims on behalf of the estate when

20  she was appointed as receiver in the underlying case, to " 'initiate' any 'action' in state or federal

21  court." Mot. at 10. Defendants argue that when Plaintiff took custody of the assets, established

22  control of the entity, and obtained the relevant documents and records as a receiver, she already

23  had the opportunity to redress wrongs, and "to the extent that Plaintiff may argue that the

24  limitations period did not begin to run until she was authorized to bring suit under the Permanent

25  Injunction [citations omitted], that assertion is belied by the language . . . in the October 5, 2018

26  Order." *Id.*

27         Defendants also raise arguments as to whether Yahia is a proper defendant and whether

28  Plaintiff's claim against Zak relates back to when she filed her original complaint. *Id.* at 11–13.

This order does not reach those issues, and therefore does not summarize those arguments in detail.

### 2. Plaintiff's Opposition

Plaintiff contends that her claim is timely. She argues that, according to the statutory language, a claim under Florida Statutes section 726.105(1)(a) will not be extinguished if brought within four years after the transfer has been made, or within one year after the claimant actually discovered or could reasonably discover the transfer. Opp'n at 4. Plaintiff cites *Wiand v. Catholic Charities*, No. 8:10-CV-247-T-17MAP, 2011 U.S. Dist. LEXIS 109303, at \*32 (M.D. Fla. July 11, 2011), for the proposition that such a claim may be filed within "one year after the transfer was discovered," and *Steinberg v. Alpha Fifth Group*, No. 04-60899-CIV-MARRA, 2008 U.S. Dist. LEXIS 25527, at \*21–22 (S.D. Fla. March 31, 2008), for its holding that a receiver's claim is timely if the claim was filed within one year from "the latest date it could be said the Receiver discovered the transfers." *Id*. at 3–4.

Plaintiff asserts that the Defendants "misapply the statute of limitations for a fraudulent transfer claim" when they argue that the one-year period "begins to run upon a receiver's appointment." *Id*. at 4. The correct standard, Plaintiff contends, should be that "the statute of limitations may be extended if it is shown that the claim is made within one year after the transfer was or reasonably could have been discovered by the claimant." *Id*. (citing *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.* ("*Lancer*"), No. 05-60055-CIV-MARRA/JOHNSON, 2008 U.S. Dist. LEXIS 25709, at \*13 (S.D. Fla. March 31, 2008)).

Plaintiff disputes Defendants' assertion that Plaintiff "could have somehow discovered the Transfers and fraudulent nature of those transfers on the day she was first appointed." Opp'n at 4. Plaintiff contends that a receiver cannot "instantaneously" discover fraudulent transfers upon her appointment and cites *Hunt v. American Bank & Trust Company*, 783 F.2d 1011, 1013–14 (11th Cir. 1986), for its acknowledgment that a receiver may not be expected to discover fraudulent transactions immediately, and *Donell v. Mojtahedian*, 976 F. Supp. 2d 1183 (C.D. Cal. 2013), which declined to use the date of appointment as the beginning date for discovery under a statute similar to Florida's. *Id*. at 4–5. Plaintiff asserts that Defendants "ignored the clear language of the

statutory authority as well as case law in improperly concluding that the one-year discovery period of section 726.110 begins to run on the date of the appointment." *Id*. at 4.

Additionally, Plaintiff contends that she acted promptly following her appointment on October 5, 2018, to begin collecting and analyzing financial documents, but did not discover the fraudulent transfers until less than four months after her appointment when she received a completed forensic analysis of the AIP accounts in the CFTC Action. *Id*. at 5. Because Plaintiff discovered the transfers on January 21, 2019, she argues that she had until January 21, 2020, to file a complaint, and she did so before the deadline. *Id*. Plaintiff notes that she entered into a tolling agreement with Defendants on November 8, 2019, to toll all claims against Defendants not otherwise barred until December 23, 2019, the date when Plaintiff filed her original complaint. *Id*.

In light of the foregoing, Plaintiff argues that the second amended complaint "facially demonstrates that Plaintiff brought the fraudulent transfer claim within the one-year period," and because of this, the Court "must accept all of the [second amended complaint's] well-pleaded factual allegations as true and draw all reasonable inferences in favor of the Plaintiff" in accordance with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id*. at 6. Plaintiff argues that Defendants' position that she should have discovered the purportedly fraudulent transfers immediately upon her appointment "requires consideration of matters beyond the four corners of the complaint," and thus beyond the permissible scope of a motion to dismiss. *Id*. (citing *Lancer*, 2008 U.S. Dist. LEXIS 25709, at *11).

In response to Defendants' contention that the fraudulent transfers could have been discovered immediately upon appointment because AIP's bank records had been available in the CFTC Action, Plaintiff states that "it took months for [her] to receive and review" the documents, and even if the records had been available immediately, "it is not reasonable to assume that [she] would have been able to review AIP's bank records and identify every fraudulent transfer on the day she was appointed." *Id*. As for testimony in the CFTC action referring to transfers, Plaintiff argues that although "such testimony may indicate that payments were made to Yahia Meftah, it is similarly not reasonable to assume that Plaintiff received and reviewed this testimony immediately upon her appointment as Receiver, much less confirmed its veracity." *Id*. Going further, Plaintiff

9

maintains that knowledge of a transfer being made does not constitute knowledge of the fraudulent nature of such a transfer. *Id*.

Plaintiff reiterates "that it was not necessary for Plaintiff to review every court paper and exhibit filed in the CFTC Action immediately upon her appointment," to fulfill her duties. *Id*. Instead, she contends that the "most critical" task at the time of appointment was freezing all known assets and accounts and demanding that all records be turned over to the receiver. *Id*. at 7. Plaintiff asserts that she "expended significant time and effort following up the various financial institutions to obtain the requested account records," and once received, turned all the information over to her team of forensic accountants who alerted Plaintiff to the transfers on January 21, 2019. *Id*. Plaintiff argues that January 21, 2019, therefore, marks the "earliest day" the fraudulent transfers could reasonably have been discovered. *Id*.

Plaintiff next argues that "Defendants misconstrue the discovery rule" by suggesting that she must show she could not have discovered the transfers within one year of her appointment. *Id*. at 7. Plaintiff emphasizes that Florida Statutes section 726.110(1) does not shift a burden of proof to the claimant to show that the transfers could not have been discovered within one year; the statute merely "requires that a fraudulent transfer claim under § 726.105(a) be brought within one year after the transfer 'was or could reasonably have been discovered by the claimant.'" *Id*. at 7 (quoting Fla. Stat. § 726.110(1)). She contends that her claim is timely under that standard, and that the allegations of her second amended complaint make that clear. *Id*. at 7–8.

Plaintiff also contends that her claim against Zak relates back to the original complaint and that she sufficiently states a claim against Yahia. *Id.* at 8–10.

### 3. Defendants' Reply

Defendants again go over the statutory framework that a claimant must bring an action under section 726.105(1)(a) either within four years of the transfer at issue, or within one year from the time the claimant discovered or could have reasonably discovered the transfer. *Id*. Defendants contend that in the case of a receivership, "the rule in the Eleventh Circuit is clear that this one-year period begins to run upon the receiver's appointment," citing *Wiand v. Meeker*, 572 F. App'x 689, 692 (11th Cir. 2014) ("[T]he one-year limitations period began to run when Wiand

10

was appointed receiver."), and other similar decisions. *Id.* at 2–3. Defendants argue that Plaintiff even references decisions in her second amended complaint that agree with Defendants, and that she did not include in her opposition. *Id.* at 3 (citing *In re Blackburn,* 209 B.R. 4 (Bankr. M.D. Fla. 1997); *Fed. Deposit Ins. Corp. v. Gonzalez-Gorrondona,* 833 F. Supp. 1545, 1556–57 (S.D. Fla. 1993)). Defendants assert that the Southern District of Florida's decision in *Lancer* actually acknowledges a one-year timeline from appointment. *Id.*

"Notwithstanding the plain one-year-within-appointment rule," Defendants argue, the second amended complaint and current proceeding demonstrate that Plaintiff could have "easily discovered the transfers on the day of her appointment," because the CFTC Action had compiled declarations and exhibits pointing toward the transfers based on review of bank accounts, canceled checks, wire records, and activity statements related to Atkinson and AIP. *Id.* at 4. Moreover, Defendants argue that the CFTC's possession of bank records had been public knowledge before the receiver's appointment, and subpoenas and deposition transcripts related to Zak and Yahia had been available for almost a year prior to Plaintiff's appointment. *Id.* Defendants therefore argue that Plaintiff's actual failure to discover the transfer until January 21, 2019 is "meaningless." *Id.* Defendants conclude that the fact remains Plaintiff "could have filed the action by October 5, 2019, even if she did not actually discover the transfers until January 2019," and thus the claim is time-barred. *Id.* at 4–5.

Defendants again argue that the claim against Zak cannot relate back to the original complaint and that Plaintiff cannot state a claim against Yahia. *Id.* at 5–6.

### E.    Supplemental Brief and Evidence

At the November 4, 2022 hearing, the Court requested that Plaintiff, if she was willing, file a statement indicating when she first received documentation of the transfers at issue. The Court emphasized that Plaintiff had no obligation to do so, but that if that date could be determined, disclosing it now might result in more efficient resolution of whether Plaintiff's claims are timely than pursuing the matter through discovery. Plaintiff filed a supplemental brief and supporting declarations asserting that the earliest date she can determine that she or her accountants "first laid eyes on" the relevant bank records is November 13, 2018. Supp'l Br. (dkt. 128) at 1.

United States District Court
Northern District of California

Plaintiff's supplemental evidence indicates that Bank of America produced documents to Plaintiff's attorneys on October 18, 2018, including bank statements for the account at issue, but since earliest of those statements was from 2014, they did not include the transfers at issue in this case, which occurred in 2013.  Serna Decl. (dkt. 128-1) ¶¶ 5–6; *see* Davis Decl. (dkt. 128-2) ¶ 10.  Bank of America produced a compact disc with additional records on October 30, 2018, but that did not include records for the account at issue.  Serna Decl. ¶¶ 9–10; *see* Davis Decl. ¶ 10.  Plaintiff's attorneys and accountants initially had difficulty accessing some of the documents received from Bank of America, which required specific software that her accountants were eventually able to use to view the documents and save them in another format on November 8, 2018.  Serna Decl. ¶ 10; Davis Decl. ¶¶ 7–9.

The CFTC provided bank records from the Receivership Defendants to Plaintiff via an FTP server on October 25, 2018.  Serna Decl. ¶ 7; Davis Decl. ¶ 5.  Plaintiff's accountants downloaded those files to a network drive that they used to maintain client records.  Davis Decl. ¶ 5.

From October 25 to November 12, 2018, Plaintiff's accountants organized and inventoried the documents received from the CFTC and from Bank of America.  Davis Decl. ¶ 10.  On November 13, 2018, a consultant employed by Plaintiff's accountants began reviewing the 2013 bank records for the Bank of America account at issue and first identified the transfers to YMSP.  *Id.* ¶¶ 11–12.

The implication of the declaration filed by Plaintiff's accountant Melissa Davis is that the records at issue were included in the CFTC's October 25, 2018 upload to the FTP server.  *See generally* Davis Decl.  Jeanette Serna, a paralegal at Plaintiff's law firm, states that she believes that to be the case.  Serna Decl. ¶ 12.

Plaintiff argues that the date her accountants actually discovered the transfers (November 13, 2018) was the earliest they could reasonably have done so, "particularly in light of the volume of activity occurring in the early days of the receivership."  Supp'l Br. at 3.  She requests judicial notice of a report she filed in the CFTC Action documenting her activities during that time.  Request for Judicial Notice (dkt. 129) Ex. A.  Plaintiff contends that contrary to Defendants'

arguments, the relevant bank records were not available to her at the time of her appointment. Supp'l Br. at 8. She argues that witness testimony filed publicly in the CFTC Action was ambiguous, and that it is not reasonable to expect that she would have reviewed that testimony or confirmed its veracity ("through, at a minimum, a review of bank records she did not yet have") immediately upon her appointment. *Id.* Citing caselaw addressing public recording of real estate transactions, she asserts that the fact that information was available does not mean she reasonably could have discovered it. *Id.* at 9. Based on her view that she acted reasonably in fulfilling her duties as receiver, she argues that the statute of limitations began running no earlier than November 13, 2018, and that she therefore entered the tolling agreement before the limitations period expired. *Id.* at 9–10.

## III. ANALYSIS

### A. Legal Standard for Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on such a motion, the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the nonmoving party." *Parks Sch. of Bus. v. Symington, Inc.*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The claim must be "'plausible on its face,'" which generally requires that the claimant must plead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[P]laintiffs ordinarily need not plead on the subject of an anticipated affirmative defense" as such defenses will be relevant on a motion under Rule 12(b)(6) only when they are "obvious on the face of a complaint" or from facts subject to judicial notice. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (cleaned up).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.    Legal Standard for Rule 12(d) and Rule 56

Under Rule 12(d), a court may consider evidence beyond what is permitted by Rule 12(b)(6) by treating the motion to dismiss as "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  When a court converts a motion to dismiss to a motion for summary judgment, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*  "Whether to convent a Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 12(d) is at the discretion of the district court." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 968 (N.D. Cal. 2015); *see Barnes v. Kris Henry, Inc.*, No. 20-17141, 2022 WL 501582, at *1 (9th Cir. Feb. 18, 2022).

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id.* (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").  The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court "'to scour the record in search of a genuine issue of triable fact.'" *Id.* (citation omitted); *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

"[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  A party need not present evidence to support or oppose a motion for summary judgment in a *form* that would be admissible at trial, but the

*contents* of the parties' evidence must be amenable to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Neither conclusory, speculative testimony in declarations nor arguments in moving papers are sufficient to raise genuine issues of fact and defeat summary judgment. *S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Under Rule 56(f), a Court may "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," so long as the Court first "giv[es] notice and a reasonable time to respond." Fed. R. Civ. P. 56(f).

### C.   Plaintiff's Evidence Appears to Show That Her Claims Were Time-Barred

The main inquiry before the Court is to determine when the one-year statute of repose prescribed by Florida Statutes section 726.110(1) for claims of actual fraudulent transfer began.

Florida codified its Uniform Fraudulent Transfer Act ("FUFTA") under Chapter 726 of the Florida Statutes. "FUFTA allows a creditor to unwind a transfer of the debtor's property to a third party—and thus to use the property to satisfy its claims against the debtor—when the act deems the transfer 'fraudulent' as to creditors." *Nat'l Auto Serv. Ctrs. v. F/R 550, LLC*, 192 So. 3d 498, 504 (Fla. App. 2016) (citing generally Fla. Stat. §§ 726.105–726.108). In the suit at hand, Plaintiff brought her fraudulent transfer claim under Florida Statutes section 726.105(1)(a) for actual fraudulent transfers, which reads:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:  (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

1      A lawsuit under this statute must be brought "within 4 years after the transfer was made or

2  the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could

3  reasonably have been discovered by the claimant." Fla. Stat. § 726.110(1). That deadline is a

4  statute of repose, allowing no equitable exceptions beyond its express terms. *See Nat'l Auto Serv.*

5  *Ctrs.*, 192 So. 3d at 509, 513–14. Here, Plaintiff filed her original complaint on December 23,

6  2019, more than four years after the last transfer in question was made on December 31, 2013.

7  Her claim could therefore only be timely if brought within the one-year savings clause.

8      Although other jurisdictions have taken different approaches in interpreting their

9  analogous fraudulent transfer statutes, Florida courts have interpreted the "plain language" of the

10  savings clause to require that the one-year period begin on the date the claimant actually

11  discovered or could reasonably have discovered the *transfer* itself, not on the date that the

12  *fraudulent nature* of the transfer was or could have been discovered. *See id.* at 504–505 ("Because

13  the statute unambiguously defines the operative event as *the discovery of the disposition of the*

14  *asset*, the statute cannot mean that the one-year period runs from the claimant's discovery of facts

15  showing that the disposition of the asset *may have been fraudulent* as to creditors." (emphasis

16  added));[8] *contra Schmidt v. HSC, Inc.*, 319 P.3d 416, 425–427 (Haw. 2014) (holding that the one-

17  year period begins when a plaintiff discovers the fraudulent nature of the potential transfer);

18  *Freitag v. McGhie*, 947 P.2d 1186, 1189–1190 (Wash. 1997) (same).

19      Florida courts have also recognized that the "claimant" who triggers the one-year period

20  must be a "creditor"—an individual or entity that has a "claim"—and the term "claim" has been

21  construed broadly by statute. *See Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla.

22  2004). Creditors may have a receiver appointed "to take charge of the asset transferred or of other

23  property of the transferee." Fla. Stat. § 726.108(1)(c)(2). As far as this Court is aware, no Florida

---

[8] "In the absence of a pronouncement by the highest court of a state [as to an issue of state law], the federal courts must follow the decision of the intermediate appellate courts of the state unless there is 'convincing evidence that the highest court of the state would decide differently.'" *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (quoting *Andrade v. City of Phoenix*, 692 F.2d 557, 559 (9th Cir. 1982) (per curiam)). This Court is aware of no compelling reason to think the Florida Supreme Court would reach a different conclusion from the appellate court in *National Auto Service Centers*.

United States District Court
Northern District of California

United States District Court
Northern District of California

state courts have dealt with a receiver acting as a claimant to trigger the one-year statute of repose in actions brought under section 726.105(1)(a); when a "receiver" has been mentioned, it is usually to explain that appointment of a receiver can be a remedy for creditors under section 726.108. *See Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 504; *Freeman*, 856 So. 2d at 1276, 1277; *McCalla v. E.C. Kenyon Constr. Co.*, 183 So. 3d 1192, 1194 (Fla. App. 2016). On the other hand, a number of FUFTA claims have been brought by a receiver in Florida's federal courts, which have uniformly recognized that a receiver has standing to act on behalf of the claimant. *See, e.g., Sale v. Ferrari Fin.*, No. 19-23563-CIV-MORENO, 2020 U.S. Dist. LEXIS 176488, at *9–10 (S.D. Fla Sept. 25, 2020).

Applying the one-year filing deadline to claims brought by receivers, a number of federal courts appear to agree with Defendants that the time of appointment serves as a concrete starting point for the savings clause. *E.g.*, *Sale v. Jumbleberry Enters. United States*, No. 20-20716-Civ-WILLIAMS/TORRES, 2021 U.S. Dist. LEXIS 114314, at *12 (S.D. Fla. June 18, 2021) ("Courts in this District have generally found that once a receiver is appointed, the one-year period for actual fraud starts to run."); *Wiand v. Morgan*, 919 F. Supp. 2d 1342, 1370 (M.D. Fla. 2012) ("I further find that because the Receiver was appointed as receiver for Traders on August 9, 2010, the one-year discovery limitations period runs from that date."); *Wiand v. Meeker*, 572 F. App'x 689, 692 (11th Cir. 2014) ("Rather, the one-year limitations period began to run when Wiand was appointed receiver." (citing, *e.g.*, *Wiand v. Cloud*, 919 F. Supp. 2d 1319, 1339 (M.D. Fla. 2012))). That said, most of those decisions involve claims filed within one year of the receiver's appointment. The issue in dispute was whether the limitations period started sometime *before* the receiver was appointed, and courts consistently held that it did not. *See Meeker*, 572 F. App'x at 692; *Morgan*, 919 F. Supp. 2d at 1370; *Cloud*, 919 F. Supp. 2d at 1339.

As with all non-binding authority, these decisions are valuable only to the extent they are persuasive. It is one thing to hold that a receiver cannot be expected to have discovered a transfer before being appointed; it is something else to conclude as a matter of law that a receiver could reasonably discover any transfer immediately upon appointment. None of the cases holding that claims brought within one year of appointment were timely include any analysis to support a

17

broader rule that claims brought *outside* that period are necessarily *untimely*.

    *Jumbleberry* is an exception, in that it dealt with a claim filed after one year had elapsed from a receiver's appointment and found it to be outside the scope of the savings clause. 2021 U.S. Dist. LEXIS 114314, at *13 ("Because Plaintiff brought his claim for actual fraud over one year after he was appointed Receiver, Count I would be time-barred."). But that case—a report and recommendation, objections to which had not yet been adjudicated when the case settled soon after it was issued[9]—merely relied on rule statements from other cases where, as discussed above, a receiver brought a timely claim within one year of appointment. *Id.* at *12–13 (citing *Morgan*, 919 F. Supp. 2d at 1370; *Wing v. Kendrick*, 2009 WL 1362383, *3 (D. Utah 2009) (finding a claim timely within one year of appointment under Utah's fraudulent transfer law); *Quilling v. Cristell*, 2006 WL 316981, at *6 (W.D.N.C. Feb. 9, 2006) (same, with respect to both Florida and North Carolina law)). It includes no analysis of why such holdings should be extended to treat any claim brought later than one year from appointment as untimely. The magistrate judge in that case ultimately recommended denying the defendant's motion to dismiss based on "the undisputed terms" of tolling agreement, leaving a dispute as to whether that agreement had been terminated for later resolution on a factual record. *Id*. at *15. Even setting aside any question of whether *Jumbleberry*'s analysis of section 726.110(1)'s savings clause was necessary to the outcome of the motion at hand, its lack of explanation as to why the clock should begin to run immediately upon appointment of a receiver tends to undercut any persuasive value it might have.

    The parties' briefing of this question is also of limited use. Plaintiff relies primarily on the plain language of the savings clause, largely ignoring the line of cases that have interpreted its one-year period as running from the date of a receiver's appointment. Defendants, on the other hand, fail to acknowledge that none of the cases reciting that rule are precedential, most of them addressed claims filed within one year of a receiver's appointment and held them to be timely, and few offer any analysis to support setting a hard deadline one year after appointment.

---

[9] *See Sale v. Jumbleberry Enters. USA Ltd.*, No. 1:20-cv-20716-KMW, ECF Doc. No. 58 (S.D. Fla. July 2, 2021) (Objections), ECF Doc. No. 67 (S.D. Fla. Aug. 26, 2021) (Notice of Settlement), & ECF Doc. No. 72 (S.D. Fla. Feb. 7, 2022) (Stipulation of Dismissal).

The line of cases citing a receiver's appointment as the starting point for the one-year period under the savings clause traces back in part to the Eleventh Circuit's decision in *Hunt v. American Bank & Trust Co.* ("*Hunt II*"), 783 F.2d 1011 (11th Cir. 1986) (per curiam). *See, e.g.*, *Meeker*, 572 F. App'x at 692 (citing *Hunt II*, 783 F.2d at 1013–14). In that case, which addressed the timeliness of claims of fraud under Alabama law and securities fraud under federal law, the receiver "argue[d] that the [limitations] periods did not begin to run until such time as either he or the original receiver, in the exercise of due diligence, should have discovered the fraud, and that there is a question of fact as to when that time came," while the defendants contended that the limitations periods began on "the date the original receiver was appointed—since the receiver, as chief of the insurance department's receivership division, had at least complete access to the department's information concerning the three transactions in question." *Hunt II*, 783 F.2d at 1013. The Eleventh Circuit affirmed summary judgment for the defendants on the claims at issue, holding that where the state agency that employed the receiver already knew of the parties and transactions at issue—and their allegedly fraudulent nature—before the receiver was appointed, "[e]ven if the receiver could not have been expected to discover the causes of action involving these transactions instantaneously upon appointment, . . . as a matter of law the receiver should have been able to turn up information from his own department's files by April 21, 1979[10]—more than four months after his appointment." *Id.* at 1013–14. In reaching that conclusion, the court explicitly declined to "determine precisely when the limitations period began to run." *Id.* at 1013.

Here, if Plaintiff were afforded four months for a reasonable investigation, her claim would be timely, while if the transactions are deemed reasonably discoverable on the date of her appointment, her claim is barred. *Hunt II* does not provide authority for a question it declined to resolve, and is therefore of little use here.

The district court decision that *Hunt II* affirmed, however, provides a more persuasive

---

[10] The limitations period would have needed to begin no later than April 22, 1979 for the federal claim to be timely, and a year later than that for the claim under Alabama law. *See Hunt II*, 783 F.3d at 1013.

rational for starting the clock from the date of Plaintiff's appointment. That court found that the transaction at issue was well documented in the investigation that led to the receiver's appointment and in public filings in related shareholder derivative litigation, and that the receiver was directed "to take charge of every aspect of the company and to rehabilitate the company." *Hunt v. Am. Bank & Tr. Co.* ("*Hunt I*"), 606 F. Supp. 1348, 1357–59 (N.D. Ala. 1985). The court also reviewed evidence available to the receiver indicating that the transaction involved a conflict of interest and fraud, *see id.*—an issue not relevant here because, as discussed above, Florida law looks only to knowledge of a transaction to begin the limitations period under the savings clause, not knowledge of its fraudulent nature, *Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 504–05. Noting that " ' "the means of knowledge are the same thing in effect as knowledge itself" ' " in assessing when facts could be discovered with reasonable diligence, and that it "would be a gross admission of governmental inefficiency not to charge such a receiver with notice of facts determined by the pre-receivership investigation," the court concluded that "the Receiver either had actual knowledge of the subject fraudulent transactions or at the very least had notice of facts which with the exercise of due diligence would have led to actual knowledge thereof" and his claims were untimely. *Hunt I*, 606 F. Supp. at 1357–59 (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (in turn quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879))).

Here, much like in *Hunt*, Plaintiff was charged with broad authority to take control of AIP, gather documentation of its assets, and collect funds owed to it. *See* SAC ¶ 3. Her own allegations indicate that AIP's bank statements and similar financial documents, which she began collecting "immediately" upon appointment, revealed the transfers to Yahia, at least when presented to her team of forensic accountants. *See id.* ¶ 27. While expert analysis might be necessary at least in some circumstances to understand the *nature* of a transaction, there is no reason to believe Plaintiff could not have discovered the *existence* of the transactions at issue from the face of the documents she collected. *See Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 504–05.

Also like in *Hunt*, the investigation that led to Plaintiff's appointment as receiver appears to have uncovered at least the existence of the transfers to Yahia. As Defendants note, documents filed in the public record of the CFTC Action—in September of 2018, before Plaintiff was

appointed—indicate that investigators reviewed bank statements for the same AIP account from which Plaintiff alleges funds were transferred to Yahia.  *See* CFTC Action, ECF Doc. No. 8-3 at 6–7 (Patrick Decl. ¶¶ 13–19, discussing investigators' review of bank records revealing transactions to and from AIP's "account at Bank of America with the account number xxxxxxxx2232");[11] SAC Ex. A (detailing the transfers at issue here, all of which were from an account labeled "BOA-2232" to YMSP).  Those filings also included testimony from Atkinson apparently discussing transfers of funds to Yahia related to Atkinson's work with Zak:

> Q   Okay. Yahia Mefta [sic]?
>
> A   Yes. Yahia Mefta. So this is the company that Zak Mefta, I believe that's Zak Mefta's brother, or that's his real name. He was a very secretive type of individual, and so, so that payment is to him, which it seems to be his percentage of whatever profits were made.
>
> BY MS. PASSMAN:
> Q   And did you ever do binary with Zak Mefta?
>
> A   Zak Mefta was still, we still had our partnership agreement, I believe, on the first binary offer.
>
> Q   But that wasn't until the end of 2013, right?
>
> A   End of 2013, I believe, into 2014. To the best of my knowledge, that's when that happened.

CFTC Action, ECF Doc. No. 8-3 at 120 (excerpt of Atkinson's investigative testimony transcript at 254:24–255:11).

But this case also differs from *Hunt* in potentially meaningful ways—perhaps the most significant being that while the receiver there was employed by the same agency that conducted the pre-receivership investigation, Plaintiff here is not employed by the CTFC, and there is no indication that she had any role in the case before her appointment.  The rationale for charging her with knowledge gathered by the CFTC is therefore diminished.

While aspects of the CFTC's investigation were documented in public filings in the CFTC Action, the mere fact that investigators reviewed bank statements from the accounts at issue would not put Plaintiff on notice of the contents of those bank statements, *cf.* Patrick Decl. ¶¶ 13–19, and

---

[11] Filings in the CFTC Action are subject to judicial notice as matters of public record whose authenticity is not reasonably in dispute.

United States District Court
Northern District of California

the transcript of Atkinson's testimony is not particularly clear in its apparent discussion of transfers to Yahia, *cf.* CFTC Action, ECF Doc. No. 8-3 at 120.  Moreover, while a receiver might sometimes be able to obtain a company's own bank records immediately upon taking control, Plaintiff's supplemental evidence calls into question whether either AIP or its bank still retained statements from 2013 documenting the transfers at issue by the time Plaintiff was appointed.  According to Plaintiff's paralegal and her accountant, those statements were not included in Bank of America's document production, and Plaintiff's accountants instead apparently found the relevant statements in documents provided by the CFTC.  *See* Serna Decl. ¶¶ 8, 10, 12; Davis Decl. ¶¶ 10–12.  The facts of the case therefore call into question whether a receiver would necessarily be able to discover a past disbursement of funds from records within the control of the company in receivership.  *See also Lancer*, 2008 U.S. Dist. LEXIS 25709, at *10–14 (holding that where a receiver asserted he was prevented from obtaining relevant bank records after his appointment, disputed issues of fact precluded deciding under Rule 12(b)(6) whether a complaint filed more than one year after appointment was barred).

But even if Plaintiff could not reasonably discover the transactions upon her appointment, she could reasonably discover them once the CFTC uploaded the relevant bank statements (among other documents) to an FTP server so that her law firm and accountants could access them on October 25, 2018.[12]  On its face, § 726.110 sets an objective test of a plaintiff's reasonable ability to discover facts, apparently intended to promote efficient and predictable disposal of stale claims.  Plaintiff cites no case holding that a court should delve into when a plaintiff would reasonably be expected, in the face of competing priorities, to actually read a document after receiving it.  Particularly taking into account Plaintiff's charge to pursue funds owed to the receivership estate, if is fair to presume as a matter of law that she "could reasonably have . . . discovered" the

---

[12] While Plaintiff does not concede that she could reasonably have discovered the contents of these document immediately upon receiving them, her counsel agreed at the hearing that there is no relevant distinction between Plaintiff's accountants possessing the documents and Plaintiff herself possessing them, and her supplemental brief accepts the premise that her accountants' actual discovery of the transactions at issue could be sufficient to begin the limitations period.  Accordingly, it is not relevant whether Plaintiff herself had access to the FTP server or received notice that the CFTC uploaded documents to it (an issue not addressed by Plaintiff's supplemental brief and evidence).

United States District Court
Northern District of California

transfers immediately upon receiving the bank records documenting them.  *See* Fla. Stat.

§ 726.110(1); *see also, e.g.*, *Saadi v. Maroun*, 2022 U.S. Dist. LEXIS 97815, at *14 (M.D. Fla.

Mar. 2, 2022) (treating the date of receipt of a bank statement as equivalent to the date a transfer

could reasonably have been discovered, apparently without argument to the contrary).

It is true that as a practical matter, receivers and other recipients of voluminous document

productions often will not actually know of all transactions documented therein immediately upon

receiving them.  But the statute looks to when a claimant *could* reasonably discover the

transaction, not the date on which they *would* reasonably be expected to actually do so.  And

rather than barring a claim if not filed at that first possible moment, it allows the claimant a year to

bring a claim after the point at which they have reasonable capacity to discover the transfer.  There

may be circumstances where documents are not reasonably accessible until some later date after

receipt—as perhaps in the case of the compact disc produced by Bank of America here that could

not be accessed without special software.  *Cf.* Serna Decl. ¶ 10.  But that CD did not include the

relevant bank statements, Davis Decl. ¶ 10, and there is no indication that—if they had chosen to

do so—Plaintiff or her agents could not have downloaded and reviewed the statements revealing

the relevant transactions immediately after the CFTC uploaded them to the FTP server on October

25, 2018, *see id.* ¶ 5.  Where the transactions at issue are documented in bank records within the

receiver's possession, the conclusion that the receiver "could reasonably" discover the transaction

upon appointment is both well founded and consistent with this statute of repose's purpose of

finality and predictability.  *See generally Nat'l Auto Serv. Ctrs.*, 192 So. 3d 498.

The cases on which Plaintiff relies do not show that a different outcome is appropriate.

*Desak v. Vanlandingham*, cited in Plaintiff's supplemental brief, held that public recording of a

real estate transaction is not dispositive as to when the limitations period begins because "[i]t is

not reasonable to require a defrauded creditor to monitor the land records in all 67 counties or,

indeed, outside the state, as well, as a routine practice."  98 So. 3d 710, 714–15 (Fla. Dist. Ct.

App. 2012).  That decision is persuasive as far as it goes, but the burden of reviewing a document

that a party has in its possession—like the records at issue here after the CFTC uploaded them—is

not comparable to monitoring numerous far-flung repositories of public records, particularly given

1    Plaintiff's charge here to investigate those documents in her role as receiver.[13]

2        In *Steinberg v. Alpha Fifth Group*, the primary dispute appears to have been whether

3    claims against new defendants in an amended complaint related back to the original complaint,

4    and the court held that it could not resolve that question on a motion to dismiss.  2008 U.S. Dist.

5    LEXIS 25527, at *21–24.  The court treated the filing of the original complaint as latest date at

6    which the receiver could possibly have known of the transaction at issue, and described that

7    original complaint as having been "*arguably* . . . filed within the statute of limitations period."  *Id.*

8    at *23 (emphasis added).  The decision does not reveal the date on which the receiver was

9    appointed or received relevant documents, and there is no indication that the court or the parties

10   considered that the limitations period might run from one of those dates.  *See generally id.*  The

11   dispute in *Catholic Charities* similarly turned on relation-back arguments, and the court there held

12   that new claims in an amended complaint related back to the filing of the original complaint within

13   one year after the receiver was appointed.  2011 U.S. Dist. LEXIS 109303, at *22–29,

14   *recommendation adopted*, 2011 U.S. Dist. LEXIS 109203 (M.D. Fla. Sept. 26, 2011).

15       In *Lancer*, the court held that disputed issues of fact precluded deciding under Rule

16   12(b)(6) whether a complaint was time barred where the receiver asserted that he was prevented

17   from obtaining relevant bank records after his appointment.  2008 U.S. Dist. LEXIS 25709, at

18   *10–14.  That decision does not suggest that the limitations period would have started to run any

19   later than when the receiver eventually obtained the records at issue.

20       In *Donell*, the court relied on the fact that the receiver initially lacked knowledge of

21   whether the defendant had made a net profit from a Ponzi scheme, a necessary element of a

22   California fraudulent transfer claim under Ninth Circuit precedent.  976 F. Supp. 2d at 1186–88.

23   But the case here does not involve a Ponzi scheme that would implicate whether Defendants

---

[13] In arguably more analogous circumstances, some decisions from other states have suggested that recording *would* be sufficient to establish that a plaintiff could reasonable discover a transfer if the plaintiff *also* had a reason to investigate such transfers.  *See Sasco 1997 Ni v. Zudkewich*, 166 N.J. 579, 592 (2001) (later superseded by statute when New Jersey deleted the "could reasonably discover" language from its statute, *see* N.J. Stat. Ann. § 25:2-31(a)); *Supreme Bakery, Inc. v. Bagley*, 742 A.2d 1202, 1205 (R.I. 2000).  But this case does not involve a public recording, and this Court need not decide whether those decisions were correct.

United States District Court
Northern District of California

1    obtained a net profit, and—as previously discussed—Florida law looks only to knowledge of the

2    transfer to begin the savings clause period, not any other facts that might be necessary to support a

3    claim. *Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 504–05.

4         Finally, *Hunt II* merely assumed for the sake of argument that the limitations period might

5    begin sometime after a receiver's appointment, but held that even if that were true, the complaint

6    was still filed too long after any reasonable time for investigation and discovery of the alleged

7    fraud—which, again, is not required under Florida law, where only reasonable discovery of the

8    *transfer* is at issue. 783 F.2d at 1013–14; *see Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 504–05.

9         It appears clear that for the purpose of the Florida statute at issue, Plaintiff could

10   reasonably have discovered the transfers from AIP to YMSP upon receiving documents from

11   CFTC on October 25, 2018. *See* Serna Decl. ¶¶ 7, 12. If so, the one-year savings clause expired

12   before she entered the tolling agreement with Yahia in November of 2019, which only purported

13   to preserve claims still valid at that time. *See* SAC ¶ 28. At that point, there was nothing left to

14   toll. Accordingly, Plaintiff's claims appear to be barred as untimely.

## IV.    CONCLUSION

16        Defendants appear to be entitled to summary judgment based on the applicable statute of

17   repose. To provide Plaintiff an opportunity to present additional evidence as required by Rule

18   12(d)—and also to comply with Rule 56(f) to the extent this order implicates arguments not

19   squarely presented in Defendants' motion—the Court declines to enter summary judgment at this

20   time. Instead, Plaintiff is ORDERED TO SHOW CAUSE why Defendants' motion to dismiss

21   should not be treated as a motion for summary judgment under Rule 12(d) and granted in that

22   converted form for the reasons discussed above. Plaintiff shall file a response to this order, which

23   may include additional evidence, no later than January 13, 2023. Defendants may file a response

24   by January 20, 2023. If and only if Defendants file a response with additional evidence, Plaintiff

25   may file a final brief by January 27, 2023.

26        **IT IS SO ORDERED.**

27   Dated: December 21, 2022

     _____
     JOSEPH C. SPERO
     Chief Magistrate Judge

28

United States District Court
Northern District of California